640 So.2d 488 (1994)
STATE of Louisiana, Plaintiff-Appellant,
v.
Amos Terrell BROWN, Defendant-Appellee.
No. 93-1471.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*489 Robert Stuart Wright, for State.
David Michael Hayes, Thomas Taylor Townsend, for Amos Terrell Brown.
Before GUIDRY, DOUCET and COOKS, JJ.
DOUCET, Judge.
The State appeals the trial court's grant of the defendant's motion for a post-judgment verdict of acquittal from a conviction of manslaughter.
Before going out in the early evening of July 25, 1992, the defendant, Amos Terrell Brown, put a handgun in the waistband of his pants. He left his shirt tail out so that the gun would not show. The defendant testified that he normally carried a gun when he was going out alone. Between 6 and 7 p.m. he met Brian Johnson and Michael Nash. Together they went to a grocery store and two bars. After they left the second bar, Nash got into a fight with the victim, Rendrick Brooks. Brown and Johnson were not aware of the fight until after it started, and were not parties to it. The fight broke up when the police arrived. The three left to go to another bar. On the way, they were joined by Tim White, Larry Davis, and Roderick Stevens, who were also from their neighborhood of Bailey Heights in Natchitoches. Larry Davis later gave a statement to the police to the effect that when they met Brown, Nash, and Johnson, Nash was talking *490 about the fight and saying he was going to get Brooks. The defendant and White said they did not hear Nash say this.
The six went together back to the first bar, stayed a short time, and left. Johnson suggested they go to the playground to see if anything was going on there. There was no testimony to indicate that they were looking for Brooks. They didn't see anyone at the playground and continued walking. As the six walked past the Satellite Kitchen the defendant saw Brooks with a group which calls itself the "Square Boys." With them were Shrelle Davis, Viola Brown Jackson, and LaRhonda Brown, cousins of Brooks. LaRhonda Brown and Larry Davis testified that the defendant and his friends did nothing to provoke the Square Boys. Shrelle Davis's testimony indicates that as the defendant and his friends passed by, Brooks took off his shirt and handed it to her. He told her he wanted to fight Nash. She and Demetric Smith, one of the Square Boys, testified that Brooks and the other Square Boys followed the defendant and his friends to the basketball courts located, according to Larry Davis, over 100 yards from the Satellite Kitchen. LaRhonda Brown testified that before following the defendant's group, the Square Boys armed themselves with sticks.
Larry Davis, Stevens, and Nash stopped to talk before reaching the basketball courts. The defendant, Johnson, and Nash continued walking to the basketball courts and stopped there to wait for the others. The defendant testified that when he reached the goal of the middle of the three basketball courts, he looked back. On so doing, he saw a group running after him so he began to jog away. The defendant testified that five of the Square Boys were on the court near him and others followed.
The defendant saw five of the Square Boys carrying sticks. Johnson thought the number carrying sticks was four or five, plus one who carried a pipe. White and Davis saw three with sticks. Davis described one of the sticks as a "2 × 4" of the type used in construction. Testimony as to the total number of Square Boys present varied from 7 to 16.
One of the Square Boys yelled at the defendant and his friends asking what they were doing on the Square Boys turf. The defendant and Johnson both testified that defendant told the Square Boys that he and his friends were just walking and did not want any trouble. Johnson heard the Square Boys say, "No, ya'll came over here for a reason," and the defendant reply, "No man, we don't want no trouble." The defendant testified that he continued to run as this exchange took place. Johnson said that he, Nash, and the defendant began walking off when someone hit the defendant. The defendant testified that he was hit on the arm and the back of the head. Defendant testified that he then turned around to face the oncoming group, pulled out his gun and fired. He said he was scared, he fired to escape, and didn't see any alternative. Johnson testified that he, too, was hit by the Square Boys and fell. He heard a gunshot and ran. Johnson testified that when he heard the shot, the defendant had already been hit.
To the contrary, Shrelle Davis and LaRhonda Brown testified that the Bailey Heights group threw the first punch. Shrelle Davis further testified that the defendant came from around a bush as the victim turned to run. She stated that before Brooks began to run, the defendant pulled a gun and shot him.
Dr. Charles Cook testified that the bullet entered the back of the victim's head and exited the front, killing the victim. Officer Harmon Winters found the defendant's gun where the defendant hid it. He testified that it contained five full rounds and a spent round under the hammer. He estimated that the victim was about 15 feet from the defendant when the shot was fired.
As a result of this incident, the defendant was charged with second degree murder. At trial, the defendant pled self-defense. The jury returned a verdict finding the defendant guilty of manslaughter, a violation of La.R.S. 14:31. The defendant moved for a new trial and for a post-verdict judgment of acquittal, based on sufficiency of the evidence. After a hearing, the trial judge granted the defendant's motion for a post-verdict judgment of acquittal. The State appeals.
*491 The State alleges that the trial judge erred in granting the defendant's motion for postverdict judgment of acquittal and reversing the jury's finding that the defendant was guilty of manslaughter. Additionally, the State alleged that the trial judge erred in finding that the defendant committed this homicide in self-defense when the law and the evidence suggest otherwise.
... The correct vehicle for asserting defendant's argument that the state failed to prove an essential element of the crime is the motion for a post verdict judgment of acquittal, C.Cr.P. 821, or the motion for a new trial, C.Cr.P. 851.
State v. Allen, 440 So.2d 1330, 1332 (La. 1983).
La.Code Crim.Proc. art. 821(B) provides that a post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. Where the motion is granted, paragraph (D) of this article allows the State to seek review by invoking the supervisory jurisdiction of, or by appealing to, the appropriate appellate court.
... The standard of review, as set forth by the United States Supreme Court and adopted by this court, is whether "upon the record adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Johnson, 426 So.2d 95, 101 (La.1983).
State v. Allen, supra, at p. 1333.
It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See: State ex. rel. Graffagnino, 436 So.2d 559 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The defendant was convicted of manslaughter, a violation of La.R.S. 14:31(A), which provides in part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;
Since the defendant raised the issue of self-defense, the State had the entire and affirmative burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. The defendant who raises the issue does not assume any burden of proof. State v. Garcia, 483 So.2d 953 (La.1986).
La.R.S. 14:20(1) provides that a homicide is justifiable:
When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
However, La.R.S. 14:21 provides that:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Therefore, the first issue to be addressed is whether the defendant was the aggressor. The evidence established that the victim and his companions left the safety of the Satellite Kitchen, armed themselves with sticks, and pursued the defendant and his companions for 100 yards. Shrelle Davis, the victim's cousin, testified that the victim had a problem with Nash and wanted to fight him. There was no evidence presented to show that the defendant went looking for the victim or the other Square Boys. Even though there is conflicting testimony as to *492 which side threw the first punch, there was no evidence that it was the defendant who did so. Therefore, the defendant was not the aggressor and is not precluded from raising self-defense as an issue.
Next, it must be determined whether the defendant reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself from that danger. La.R.S. 14:20. The standard in this article is whether the defendant's subjective belief that he was in danger is reasonable. The subjective nature of this test can be seen by comparing the language in La.R.S. 14:20 to that in La.R.S. 14:31 on manslaughter. The article on manslaughter looks at what the "average person" would have felt, an objective evaluation. See La. R.S. 14:31, reporter's comments.
The determination of whether the defendant's belief was reasonable is based on the factual situation at hand. Several factors are to be considered. State v. Bailey, 261 La. 831, 261 So.2d 583 (La.1972). One such factor is the number of people accompanying the defendant, versus the number of Square Boys. The evidence supports the defendant's testimony that upon beginning his walk to the square area he was accompanied by Nash, Johnson, White, Larry Davis, and Stevens. Shrelle Davis, a witness to the fight, estimated that the defendant was a part of a group of 10 to 15 people, although she could name only the defendant, Larry Davis, Johnson, and White as being part of the group with the defendant. Demetric Smith estimated that there were 16 people with the defendant, although he could name only White, Larry Davis, Nash, and Johnson. LaRhonda Brown estimated that there were 15 people in the defendant's group. Although the State's witnesses estimated that there were more than six people in the defendant's group, no one could name anyone other than the six named by the defendant.
Additionally, as they walked down Trudeau Street towards Martin Luther King Drive, Larry Davis, Stevens, and White dropped out of the group to talk to someone. As a result, the defendant was accompanied by only two people.
On the other hand, the defendant estimated the number of Square Boys chasing him as 12. Johnson estimated the number in the victim's group as 15 to 16. White testified that there were many more of "them" than "us." The defendant said he thought that there were 12 or more in the victim's group. LaRhonda Brown testified that there were 10 to 12 people accompanying the victim at the time. Demetric Smith testified that he and approximately six others accompanied the victim.
The following people were named by various witnesses for the State as having accompanied the victim: Demetric Smith, Richard Smith, Casson, Michael Murphy, Eddie Poole, "Mogie," "Pooh Bear," and Steve Collins. While the testimony does not clearly establish how many people were with the victim, the State's own witnesses testified that there were from seven to twelve in the victim's group.
The defendant described those nearest him as being as big or bigger than he was. The defendant did not see any of the victim's group get hit. The defendant said he saw Johnson on the ground after Johnson was hit, with four to five Square Boys around him. The defendant also said there were four Square Boys around him, two of whom had sticks.
Another factual consideration is the number of Square Boys who were armed. All of the State's witnesses admitted that some of the Square Boys were armed with sticks. The evidence puts the number of those armed somewhere between two and five with some witnesses stating that a pipe and a "2 × 4" were involved.
As the confrontation progressed, the defendant retreated from the basketball court across the first street, up the hill, crossed the next street, and went towards the boulevard. There is no evidence that he pulled his gun until after the Square Boys chasing him had hit him. The defendant estimated that the distance from the Satellite Kitchen to the point where he fired the gun was approximately 160 yards.
*493 The jurisprudence suggests that the defendant's actions after the shooting should be considered in determining whether the killing was done in self-defense. See State v. Ducre, 596 So.2d 1372 (La.App. 1 Cir.), writ denied, 600 So.2d 637 (La.1992). Shrelle Davis testified that after the shooting, the defendant said the victim would be dead before help arrived. However, she admitted that she had previously told the defendant's counsel that the defendant did not say anything after the shooting and told the police that the defendant said, "Die nigger." She never said which version was correct. She said that her memory would have been freshest right after the incident when talking to the police. Jackson, who testified that she was standing closer to the incident than Shrelle Davis and LaRhonda Brown, said that she heard no statements at all after the shot was fired.
After the shooting, the defendant discarded his gun near Bayou Jacks at Lafayette Street. Then he went home where he was later arrested.
At the hearing on defendant's motion for post verdict judgment of acquittal, the trial judge ruled as follows:
... All right. Put this in the minutes so that any reviewing court will know why this Court acted as it did. All right, first of all, the Court is going to grant the motion to acquit Mr. Brown because the evidence was insufficient to prove that the defendant did not act in self defense. I find the facts of this ... in this incident indicate that Mr. Brown and one (1) or two (2) of his friends, who were in no way seeking trouble, were surrounded by a youth gang. Whether they were an organized gang or simply a group of youths who gathered up, they set upon Mr. Brown and his two (2) friends. Mr. Brown and his two (2) friends were trying to get away. The testimony was that Mr. Brown not only was not the aggressor, but he retreated some one hundred and sixty (160) yards before he reached a point where he was cornered and far out-numbered. At that same time, he saw one (1) of his friends already on the ground being beaten with sticks by this youth gang. He had ... he felt reasonably certain he was about to suffer the same fate. He pulled a gun and he fired it. And it's unfortunate. It's unfortunate that it happened. He didn't, but ... I think that it was reasonable for him, when surrounded by some five (5) or six (6) people beating on him with sticks, to shoot in self defense. It, apparently the victim had already turned to get away or... but who knows what the other four (4) or five (5) were doing. And it's just an unfortunate situation, but I don't think that Mr. Brown should go to prison over a situation that he was doing everything within his power to avoid. And for that reason, the motion for acquittal is going to be granted.
The evidence, when viewed in the light most favorable to the State, supports the trial judge's finding that the defendant and his two companions were surrounded by the Square Boys. The evidence also supports the trial judge's finding that the defendant and his friends were in no way seeking trouble and were trying to get away. The testimony was uncontroverted that the victim and the rest of the Square Boys left safety to pursue the defendant and his companions. The evidence also establishes that the defendant and his friends attempted to retreat when surrounded by the Square Boys.
There was uncontroverted testimony that someone with the defendant threw the first punch. There is no indication that the defendant was the one who did so or that the defendant and his companions had gone to the square area looking for trouble. Therefore, the trial court properly found that the defendant was not the aggressor.
The evidence also supports the trial judge's finding that the Square Boys outnumbered the defendant and his two companions who were on the basketball court, and that one of these companions was already on the ground being beaten. Additionally, the defendant did not draw his gun until after the Square Boys began to beat him with sticks. Viewing the evidence in the light most favorable to the State, the record supports the trial judge's finding that the State failed to prove beyond a reasonable *494 doubt that the defendant did not act in self-defense.
Accordingly we affirm the trial judge's decision to grant the defendant's motion for post-judgment verdict of acquittal.
AFFIRMED.