liCARAWAY, Judge.
Clifton McHenry was indicted for the second degree murder of Robert Lee Henderson. After a jury trial, McHenry was convicted as charged and given the mandatory life sentence without benefit of probation, parole or suspension of sentence. He now appeals, urging 10 assignments of error. We affirm the conviction and sentence.

Facts

At about 12:30 a.m. on April 26, 1996, 25-year-old Robert Henderson drove his girlfriend’s car to the Blitz Caf, a night club in Bastrop, to get something to eat. Henderson parked the ear across the street from the Blitz with the passenger side of his car facing the club. He walked across the street to the Blitz and ordered some fried chicken. Henderson left the Blitz eating the chicken, crossed the street, and got back into the car.
The state’s principal eyewitnesses, Marion Blakely and Tina Jackson, were sitting together in front of the Blitz and observed Henderson sitting in the car with the door open eating chicken. Though these two women gave differing versions of some details of the events and had certain conflicts between their testimony at trial and their testimony at a pretrial hearing, both witnessed the defendant, McHenry, and Ronald Evans proceed from the Blitz across the street and confront Henderson as he sat in the car. Blakely and Jackson further testified that while McHenry was standing beside the open door of the victim’s car, McHenry openly held a gun in his hand. They then observed the defendant aim at Henderson attempting to fire the weapon, which first misfired. Then, as Henderson leaned forward to close the door and start the engine, both women stated that he was shot by the defendant. Neither woman observed Henderson with a gun, heard Henderson *406 speak to McHenry or Evans, nor reported Henderson making any ^significant gesture ■with his hands or otherwise toward McHen-ry. Finally, as Henderson’s vehicle started moving down the street following the shooting, both women observed the defendant running after the vehicle and firing a second shot at Henderson’s car.
Shortly thereafter, the victim’s car left the highway and slid into a drainage ditch. The first shot fired by the defendant entered the victim’s left shoulder and traversed his chest cavity, piercing his aorta. The victim died as a result of the gunshot wound. When the car rolled into the ditch, Blakely heard the defendant say “I shot him.” Jackson heard the defendant say that “he was dead.” The defendant then ran down an alley away from the scene.
Policé found no bullet holes in the victim’s vehicle. No weapon was found on the victim’s body or inside the car. One spent .380 shell casing and one deformed live round of the same caliber were found at the scene.
Three days after the shooting, officers located the defendant in a Bastrop residence, but the defendant fled before he could be arrested. The defendant surrendered the next day and made a statement to police which was introduced at trial.
In defendant’s recorded statement, he told police that Henderson called him over to the ear and that Evans had gone with him. The defendant said that as they were talking, Henderson leaned over in his seat and came back up with a “black .25” (a pistol) pointed at him. The defendant said that he drew his own weapon, a Lorein .380, and fired at Henderson in self-defense. The defendant told police that Evans took Henderson’s gun from the victim’s car after the shooting. He said he later saw Evans putting the gun and a wallet underneath a house behind the Blitz. McHenry said that he did not .know why Henderson would pull a gun on him and that they had no reason to be angry with one another.
[ gRonald Evans testified at the trial that Henderson was supposed to have given him and some other person a ride to another club later that evening. He said that he was beside Henderson’s car when the defendant walked up and shoved him out of the way. Evans said that he heard the defendant say that Henderson had “ratted” on him at some point and called the police to his house. Evans testified that -the defendant then pulled out a gun and shot the victim as the victim tried to drive away.
Evans testified that at the time of the shooting, the victim’s “hands was like he had a gun on his lap” and that “it looked like he was trying to go for it but he didn’t get a chance to make it to it.” When asked whether he was sure the victim had a gun, Evans said “I can’t really say it was a gun. I can’t say that it was a gun.” Evans had previously made a statement to the police indicating that the victim had a black pistol on his knee. Evans, a convicted felon whose testimony was severely impeached with his prior inconsistent statements, also testified that the defendant tried to improperly influence Evans’ testimony while they were in jail together.
After hearing all the evidence, the jury voted unanimously to convict the defendant of second degree murder. Defendant raises ten assignments of error which we discuss herein in logical rather than numerical order of presentation.

Discussion

Assignment of Error 2. The Court erred in denying the defendant’s motion for post-verdict judgment of acquittal.
Assignment of Error 6. The evidence was insufficient to convict the defendant-of second degree murder.
Assignment of Error 9. The Court erred in including the State’s requested jury charge on thie aggressor doctrine.
After a brief hearing, the court denied the defendant’s motion for post-verdict judgment of acquittal on grounds of insufficient evidence to convict. The ^defendant's complaint of insufficiency is based upon the alleged failure of the state to prove that defendant did not kill Henderson in self-defense. The defense of self-defense or justification cannot be raised if the defendant was the aggressor, see La. R.S. 14:21, and, therefore, defendant also complains that the *407 trial court erred in charging the jury on the aggressor doctrine.
These three assignments of error all pertain to the sufficiency of the evidence. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt.
Further, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. Where the trier of fact has made a rational determination, an appellate court should not disturb it. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Brown, 628 So.2d 207 (La.App. 2d Cir.1993).
La. R.S. 14:30.1(A) provides that second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. Self-defense constitutes justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20(1); State v. Cotton, 25,940 (La.App.2d Cir. 03/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App. 1st Cir.1992), writ denied, 92-2351 (La.05/12/95), 654 So.2d 346. The state, and not the Isdefendant, has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Harris, 26,411 (La.App.2d Cir. 10/26/94), 645 So.2d 224. However, a person who is the aggressor cannot claim the right of self-defense. La. R.S. 14:21. Hence, there is a threshold sufficiency question under the aggressor doctrine before we determine the sufficiency question of whether self-defense justified the defendant’s actions in this case. See, e.g., State v. Brown, 93-1471 (La.App. 3d Cir. 05/04/94), 640 So.2d 488.
La. R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Defendant contends that the jury instruction on the aggressor doctrine was error because “all eye-witnesses to the shooting, Evans, Blakely and Jackson, testified that defendant made no aggressive actions toward the victim.” It is true that McHenry’s sudden shooting of Henderson was admitted by the witnesses not to have been preceded by any other physically aggressive actions. Nevertheless, the shooting itself and the circumstances involving the conduct of both McHenry and the victim show beyond a reasonable doubt that McHenry was the aggressor.
As summarized above, the testimony of the two completely innocent bystanders, Blakely and Jackson, agreed entirely that McHenry had his gun in hand as he approached Henderson. Their testimony indicated no sudden defensive action by McHenry with the gun in response to the victim, thus contradicting the defendant’s statement that he pulled his weapon only after he saw Henderson reach for a gun. Both witnesses testified that Henderson started his car and was closing the door to drive away as defendant first misfired his gun then shot the defendant.
|fiWe therefore find that the jury instruction on the aggressor doctrine was appropriately given and that the evidence, viewed in the light most favorable to the state, sufficiently established that McHenry was the aggressor. While defendant’s claimed right of self-defense is not available to him as the aggressor, we further believe that the state’s evidence proved beyond a reasonable doubt that the killing was not in self-defense. While Evans’ highly controverted testimony raised the possibility that the victim had a gun, all other circumstances indicated that this phantom gun was never employed in a threatening manner by the victim or, having not been found in the car or shown to have been removed from the car, *408 never existed. The victim attempted to flee by starting his vehicle, in contrast to the defendant who chased .after the car firing another shot.
The three assignments of error relating to the sufficiency of the evidence are without merit.
Assignment of Error 7. The Court erred in not requiring Ronald Evans, a defense witness, to testify at the Bond Reduction hearing and in allowing the prosecutor to make improper comments in Evans’ presence, thus precluding preservation of this witness’ untainted testimony for trial.
At a bond reduction hearing, the defendant called Evans to testify. As Evans took the stand, the court asked the prosecutor whether the state had disposed of all of the “matters relating to this shooting” pertinent to Evans. The prosecutor responded:
Judge, that’s a good question. Now, at this point we’ve not charged ... Mr. Evans with anything. I must say to you if something develops that we don’t know about[,] the potential is there for something else to occur with respect to Mr. Evans[,] but right now[,] I’m not aware of anything that we’re gonna do or anything that is new.
Defense counsel responded by saying that the state would have charged Evans with something already if there were a reason to do so, and the prosecutor responded:
UWell, Judge, if Mr. Evans says something today that’s the wrong thing I don’t have any other choice... I’m not saying that he is but...
The judge then explained to Evans that if he made a statement that indicated criminal involvement in the case, that statement could be used against him in a subsequent prosecution. After Evans indicated that he did not fully understand the judge’s explanation, the court explained to him in detail his privilege against self-incrimination under the 5th Amendment. The court also expressed concern that the defense lawyer, who represented both the defendant and Evans, was put into a conflict of interest by asking Evans to testify when his testimony might incriminate him. Counsel assured the court that Evans had no involvement in the incident.
Nevertheless, upon taking the stand, Evans elected to assert his 5th Amendment privilege and chose not to testify. The court then said:
Step down. I’m not going to force him to. Alright, now the other thing is this, Mr. Wheeler, you’re going to have to deal with this this way. This man is going to have to have ... if you intend to call him at the trial of the case, if you need his testimony at the trial of the ease, he’s going to have tq have a different lawyer.
Defense counsel: That’s fine, judge.
The defendant did not object to the court’s ruling on Evans’ assertion of his privilege under the 5th Amendment.
La.C.Cr.P. art. 841 provides, in pertinent part:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court’s ruling on any written motion.
The defendant’s written motion in this instance was his motion to reduce bond, not a motion to perpetuate the testimony, of Evans. Therefore, in order to preserve | gthe issue for appeal, he should have objected to the court’s ruling permitting Evans not to testify. Because he did not do so, this issue is not properly before this court for review.
Nevertheless, even if the issue was properly raised, any error presented does not rise to the level of reversible error. La. C.Cr.P. art. 921. The defendant presents quite a lengthy argument on this issue in brief, but we are not persuaded that the court should have forced the witness to testify — despite 5th Amendment and conflict of interest concerns — at this preliminary hearing. The prosecutor did not make any “in *409 timidating threats” as the defendant argues; rather, he correctly recited the law as it pertains to incriminating statements. Further, as the state points out, the defendant’s right to confront Evans was preserved at trial. Counsel extensively cross-examined this witness about his prior inconsistent statements recorded in a taped conversation between Evans and defense counsel.
This assignment of error is without merit.
Assignment of Error 1. The Court erred in denying the defendant’s motion for new trial.
Assignment of Error 3. The verdict was contrary to the law and the evidence in this case.
Assignment of Error 4. The Court erred in denying the defendant’s motion for mistrial when the defense obtained Brady material during the trial and the Court denied the defendant’s request for time to review the newly obtained material.
In these three assignments, defendant argues that the trial court should have granted him a new trial because of the prosecution’s failure to disclose before trial allegedly exculpatory information contained in a recorded statement obtained by the state from Ronald Evans.
In pretrial discovery pursuant to La. C.Cr.P. art. 718(1), the defense had requested copies of documents in the state’s possession which were favorable to the defendant and material and relevant to the issue of guilt. The defense had also 19specifically requested any written or recorded statement of a witness. The state responded by providing copies of the police reports regarding the investigation of this case. The reports contained exculpatory material concerning Evans’ statements that he saw a gun in Henderson’s automobile. The police report also stated that Evans had given a recorded statement to the police, but the transcript of Evans’ statement was not produced by the state.
At trial, when the state called Evans as a witness, the defendant asked that the state be ordered to provide him with a copy of Evans’ statement. The court quickly scanned the transcript of Evans’ statement and, without stating whether the statement contained exculpatory material, directed that a copy be provided to the defense. The court denied the defendant’s request for a recess to review the material indicating its belief that the defense already knew the substance of the statement from the other materials previously provided by the state.
Unfortunately, Evans’ statement is not included in the record before us. The defense failed to object to the trial court’s ruling denying the requested recess and failed to offer the transcript in support of its motion for the recess. The trial court’s granting of defendant’s request for the transcript without expressly finding that the statement included exculpatory information hinders our review of this issue. Specifically, there is no way to know whether the statement contained exculpatory information not included in the police reports. However, on this record, the defendant has not shown he suffered prejudice sufficient to warrant reversal of his conviction.
Defendant is entitled to inspect and copy tangible items, including documents, books and papers which are within the state’s control and which are favorable to defendant. La.C.Cr.P. art. 718. The state is required to produce exculpatory evidence upon the request of a defendant. A defendant may not be | ipdenied exculpatory statements made by a witness other than defendant, provided the statement is material and relevant to the issue of guilt. State v. Ates, 418 So.2d 1326 (La.1982). A defendant’s request for such materials must be specific and relevant. The state, however, has no duty to provide defense counsel with unlimited discovery. Id. and La.C.Cr.P. art. 723.
As ruled in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the due process clause of the Fourteenth Amendment to the United States Constitution requires, upon request, the disclosure of evidence which is favorable to the accused, when the evidence is material to guilt or punishment. The prosecutor may not suppress such evidence. When exculpatory evidence previously requested by the defense is withheld until after trial and conviction, due process requires a reversal of the conviction. *410 Brady, supra. This remedy is based on the theory that the trial court had no opportunity to address and correct the prejudice created by the late disclosure. State v. McLemore, 26,106 (La.App.2d Cir. 06/24/94), 640 So.2d 847, urnt denied, 94-1908 (La.12/09/94), 647 So.2d 1107, cert. denied, 514 U.S. 1116, 115 S.Ct. 1974, 131 L.Ed.2d 868 (1995).
In this case, the adverse effect of favorable evidence disclosed late but before a verdict is measured by a different standard. Disclosure of exculpatory evidence by the state must be made at such a time as to allow the defense to use the material efféctively in the presentation of its case. State v. Prudholm, 446 So.2d 729 (La.1984). In this instance, the court directed the prosecutor to provide the defendant with a copy of Evans’ statement during the trial, and the prosecutor complied. Under these circumstances, it must be determined whether the late disclosure so prejudiced the defendant that he was denied his constitutional right to a fair trial. State v. Smith, 430 So.2d 31 (La.1983).
| nLouisiana statutory law addresses the court’s ability to fashion a remedy for such a late disclosure of evidence. La.C.Cr.P. art. 729.5 provides, in pertinent part:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The defendant did not make a motion for a mistrial; rather, he requested a recess. The court denied that relief. The defendant did not object to the court’s refusal to grant a recess. Indeed, counsel seemed satisfied with the court’s ruling on the issue because the state was forced to provide the defendant with the transcript. La.C.Cr.P. art. 841 requires a defendant to make an objection to a ruling of the court before challenging that ruling on appeal. At the time of the disclosure of the evidence, the defense did not feel it necessary to make an objection to the denial of the request for a recess. The absence of an objection to the court’s refusal to grant a recess strongly suggests that the defendant was not prejudiced by the late disclosure of the transcript of Evans’ statement.
Moreover, the cross-examination of Evans was replete with references to prior inconsistent statements made both at the time of the Evans’ recorded statement to the police and at a later recorded interview taken by defense counsel. In fact, the defense began its cross-examination by challenging Evans concerning his statements to police about the victim’s weapon.
There being no showing that Evans’ statement contained significant exculpatory material, other than his report of the weapon in Henderson’s car which was effectively brought out through cross-examination, the record reveals no I ^prejudice to the defendant denying his constitutional right to a fair trial. The assignments of error are without merit.
Assignment of Error 5. The Court erred in denying the defendant’s motion for mistrial when the prosecution’s witness made statements about other crimes evidence even though the prosecution assured the Court and the defense that he would warn all prosecution’s witnesses against making such statements.
On April 25, 1996, one day before the shooting, the defendant accidentally shot himself in the finger. The defendant made a motion in limine urging the court to prohibit the state from referring to this incident on the grounds that such evidence would be irrelevant and inflammatory. After the prosecutor assured the court that he would admonish each of the witnesses not to refer to the incident, the court denied the motion.
However, the state neglected to tell Ronald Evans not to refer to this incident. Neither the state nor the defense directly questioned Evans about this event, but during the defendant’s cross-examination of the witness, in answer to a question about when Evans first saw the defendant at the Blitz, Evans replied that at approximately 7:20, defendant *411 approached him and several other people saying he had shot himself in the finger.
Defense counsel immediately objected to Evans’ answer and subsequently asked for a mistrial. The court denied the motion for a mistrial but offered to admonish the jury regarding Evans’ last comment. The defendant objected to the denial of a mistrial and also asked the court not to admonish the jury because such action would draw their attention to the statement. Counsel then resumed the examination of the witness without further comment or incident.
Defendant argues on appeal that the prosecutor, despite his promise to do so, failed to admonish the witness not to talk about the finger shooting incident and that this failure led to the evidence being presented to the jury. The defendant complains that this evidence was so prejudicial that its presentation required the |i3COurt to declare a mistrial. The state argues that the reference is not properly considered other crimes evidence and that the defendant was not prejudiced by the reference.
La.C.Cr.P. art. 770(2) provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
As the state points out, the witness in question was not among the listed group of persons under this article whose other crimes remarks will mandate a mistrial. Also, shooting one’s self in the finger is not a crime.
Thus, the question is governed by La. C.Cr.P. art. 771, which provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and, unless mandatory, is committed to the sound discretion of the trial judge. State v. Keys, 29,369 (La.App.2d Cir. 05/07/97), 694 So.2d 1107, writ denied, 97-1387 (La.10/31/97), 703 So.2d 21. A discretionary mistrial should be ordered only if a trial court determines that an admonition is not adequate to assure the defendant a fair trial. Id.
I14TI1ÍS case is atypical in that the parties anticipated the possibility that a witness would refer to the incident, the defendant filed a motion in limine to prohibit the references and the prosecutor agreed to warn the witnesses not to refer to the defendant’s misadventure. While there is no showing of bad faith, the prosecutor failed to warn Evans as agreed.
Despite these unusual circumstances, the defendant is not relieved of the burden of showing that the district court abused its discretion by refusing to grant a mistrial. However, because the parties anticipated the potential prejudice such a reference might cause and because the state failed to comply with the agreement to admonish the witness, the introduction of this evidence will be closely scrutinized for prejudice to the defendant.
The defendant argues that the jury could have considered the remark to prove that he was known to carry a gun and handle it recklessly. Likewise, the close proximity of the event to the killing is significant. Defendant therefore asserts that the statement was so prejudicial and inflammatory that his right to a fair trial was denied.
*412 Evidence that a defendant is unlawfully armed may, in some cases, show the defendant’s proclivity toward violence. If such defendant is urging a colorable claim of self-defense, improper evidence showing that he was a violent person would impermissibly undermine that defense and could amount to reversible error.
Nevertheless, in this instance, the remark by Evans cannot fairly be interpreted in the manner argued by defendant. Evans only said that the defendant had shot his own finger. He did not state the place and circumstances of that shooting. Evans did not indicate that the defendant was habitually and illegally armed or that the accident was the result of some violent behavior. Because the defendant did not testify, the jury did not learn whether he had a prior criminal | igrecord sufficient to make his mere possession of a firearm illegal under La. R.S. 14:95.1.
Evans’ statement thus improperly tended to show only that the defendant was a careless person, but did not show that the defendant was inclined to illegally carry a weapon or that the defendant was a violent person. This showing of prejudice is insufficient to merit reversal. Although the prosecutor should have admonished the witness before the trial and the jury should not have heard the comment, the evidence did not deprive the defendant of a fair trial.
This assignment of error is without merit.
Assignment of Error 8. The Court erred by playing for the jury certain portions of the defendant’s recorded statement to police officers, which contained prejudicial references of hearsay that would not otherwise have been admitted.
Prior to the jury’s hearing of a tape of the defendant’s statement to the police, the defendant objected to portions of the statement as inadmissible hearsay. In the recorded police interrogation, defendant was first asked whether he felt that Henderson had “ratted you out or snitched you out about something.” Then, he was asked if he had ever heard anyone say that he was mad at Henderson because Henderson had “ratted him out.” Defendant answered in the negative to both inquiries. The court overruled the defendant’s hearsay objection and permitted the jury to hear this portion of the taped statement.
Though the defendant has a statutory right under La. R.S. 15:450 for his statement to be introduced in its entirety, the defendant may elect to waive his right to have the complete statement admitted. See State v. Haynes, 291 So.2d 771 (La.1974). Here, the defendant complains that the trial court should have excised the foregoing questions to defendant since they made reference to hearsay remarks. Hearsay is defined in La. C.E. art. 801(C) as a statement, other than one | lemade by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted therein.
In the exchange between Officer Tubbs and the defendant, the officer did not repeat an out-of-court statement made by a declar-ant. Rather, the officer merely inquired whether the defendant believed that Henderson had “ratted” on him and then asked whether the defendant had heard anyone make a statement to that effect. No hearsay statement was repeated by the examining officer. The question, however, suggested that such a statement by an unidentified declarant might have been made.
The defendant denied that he felt that Henderson had “snitched” on him or that he had heard other parties say that Henderson had snitched on him. Thereafter, the very next question of the officer asked the defendant why the victim would pull a gun on the defendant. In the immediate context of the questioning, therefore, the indirect reference or suggestion regarding the talk on the street concerning Henderson’s betrayal of McHenry equally suggests a reason for Henderson to have been apprehensive of the defendant and to have drawn a gun on the defendant as alleged in the defendant’s testimony to the police.
Moreover, in the testimony of Evans and Tina Jackson, both witnesses stated that they had heard the defendant say immediately prior to the shooting that the victim had “snitched” on him. Although Evans’ and Jackson’s testimony concerning the “snitch” *413 controversy was impeached on cross-examination by the admission of their prior inconsistent statements, the possibility of the bad feelings between McHenry and Henderson because of Henderson’s “snitching” was before the jury in the testimony of Evans and Jackson. The claimed prejudice of the suggestion of hearsay statements from the police questioning of the defendant is, therefore, not established. This assignment is without merit.
1 ^Assignment of Error 10. The Court failed to advise defendant of his post-conviction rights constituting error patent.
The defendant correctly notes that the court failed to inform him of the prescriptive period for post-conviction relief as required by La.C.Cr.P. art. 930.8 which constitutes error patent. This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); La.C.Cr.P. arts. 921, 930.8(C). The district court is ordered to send defendant written notice setting forth article 930.8’s prescriptive period and to place into the record evidence of defendant’s receipt of such notice.

Conclusion

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.