STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1583

STATE OF LOUISIANA

VERSUS

CHRISTOPHER HENRY JOSEPH

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22090-08
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.

FIRST DEGREE MURDER CONVICTION AND SENTENCE VACATED,
SECOND DEGREE MURDER CONVICTION RENDERED,
AND REMANDED FOR RESENTENCING.

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana 70602
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Christopher Henry Joseph

**Christopher Henry Joseph**
**In Proper Person**
**Camp D, Falcon-4**
**Louisiana State Penitentiary**
**Angola, Louisiana  70712**
        **DEFENDANT/APPELLANT**


**John F. DeRosier**
**District Attorney, Fourteenth Judicial District**
**Jonathan Blake − Assistant District Attorney**
**Carla S. Sigler − Assistant District Attorney**
**Karen C. McLellan − Assistant District Attorney**
**601 Lakeshore Drive, Suite 600**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**GENOVESE, Judge.**

Defendant, Christopher Henry Joseph, appeals his first degree murder conviction and life sentence, alleging insufficiency of the evidence and excessive sentence. We vacate Defendant's conviction and sentence for first degree murder, render a judgment of conviction on the lessor included responsive offense of second degree murder, and remand the case to the trial court for resentencing.

## FACTS AND PROCEDURAL HISTORY

On August 28, 2008, Defendant shot and killed Darius Wilson. He was indicted on October 31, 2008, for first degree murder, a violation of La.R.S. 14:30. Subsequent to jury trial February 15–17, 2011, Defendant was found guilty as charged. On March 11, 2011, he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.

Defendant did not file a motion to reconsider his sentence. He perfected a timely appeal, wherein he alleges excessive sentence. Defendant also alleges, in a pro se assignment of error, that the evidence was insufficient to sustain the verdict of first degree murder.

## DISCUSSION

*DEFENDANT'S PRO SE ASSIGNMENT OF ERROR*
*(Insufficiency of the Evidence)*

In his pro se assignment of error, Defendant alleges that the evidence was insufficient to sustain the verdict of first degree murder. We will address Defendant's pro se assignment of error first for the reason that should there be merit to this assignment, Defendant could be entitled to an acquittal of the conviction for first degree murder under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981) and *State v. Hearold*, 603 So.2d 731 (La.1992).

At trial, Defendant did not refute that he shot the victim; however, he argued that the killing was justified in that he believed the victim reached for a gun as Defendant approached the car. In brief, he argues that the State failed to prove that he was not acting in self-defense.

In *State In re D.P.B.*, 02-1742, pp. 4-6 (La. 5/20/03), 846 So.2d 753, 756-57 (footnotes omitted), wherein the defendant had asserted justifiable homicide, the supreme court observed:

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). . . . Furthermore, in a case in which defendant asserts that he acted in self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. *State v. Brown,* 414 So.2d 726, 728 (La.1982). When defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Matthews*, 464 So.2d 298 (La.1985).

In the instant case, Defendant was charged with first degree murder. The elements of the offense of first degree murder are set out in La.R.S. 14:30 which provides in pertinent part:

> A. First degree murder is the killing of a human being:
>
> (1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, assault by drive-by shooting, first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.
>
> . . . .

2

(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.

A killing is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20(A)(1).

At trial, Ashley Renee John testified that she and Defendant had been together for approximately fourteen years. They had two daughters. The oldest was nine years old at the time of the shooting, and the youngest was six years old at the time of the shooting. The couple had separated in January 2008, and Ms. John had begun dating the victim, Darius Wilson, in April 2008.

On the day of the shooting, Mr. Wilson and Ms. John's mother had picked her up from work in the early afternoon. Ms. John explained that the girls attended school a few blocks from her grandmother's house, and it was customary for the girls to walk to their great grandmother's house after school, where Ms. John would pick them up. Ms. John testified that, on the day of the shooting, they dropped her mother off at home and went to her grandmother's house to pick up the girls. She stated that this was the second time Mr. Wilson had accompanied her to pick up the girls and that she had never spoken of Mr. Wilson to Defendant.

Ms. John stated that when she arrived at her grandmother's house, she backed the car into the driveway and waited. Shortly thereafter, she saw the girls coming down the street. As they walked toward the car, she started to pull out of the driveway when she noticed that Defendant, in a green car, raced up to her car and blocked her in. She said that Defendant jumped out of the car, talked to the oldest girl, went back to his car, and came back shooting. She stated there were no words exchanged between her and Defendant or between Mr. Wilson and

3

Defendant. Mr. Wilson just kept telling her to back up. There was no time for Mr. Wilson to even get out of the car. Ms. John left the vehicle and ran to a neighbor's house to call 911. After the shooting, Defendant sped away in the vehicle in which he had arrived.

A neighbor who lived across the street from Ms. John's grandmother, Abbie Lewis, was standing on the curb with his granddaughter when he saw a green car speed up to Ms. John's vehicle. He heard curse words and four or five shots. He stated that it was the man who was in the green car who did the shooting. He saw no one in Ms. John's car do anything. Ms. John rushed her kids across the street and used his phone.

Ms. John's oldest daughter was interviewed on the same day of the shooting by Erica Simon, a forensic interviewer for the Children's Advocacy Center. A DVD of the interview was published to the jury. During the interview, the girl essentially told the same story as her mother; however, she said that she first saw Defendant in the green car at school and that he had followed them until they saw their mother's car. When asked if anyone had said anything, she said that Mr. Wilson had kept yelling to her mother to back up the car. She said that Defendant got out of his car, hugged and kissed her, and commenced shooting.

While Defendant did not testify, the State played a DVD of an interview with Defendant conducted by the police after he had been apprehended. He stated that the incident started with a phone call from Ms. John. He said that she was trying to get back at him because he had been with another woman. He said that during a second phone call, the victim got on the phone and threatened him. He did not specify in what manner the victim threatened him. After the second phone call, he got a ride to a storage unit and retrieved a gun. He then said that he walked from wherever he was to go see the girls. He stated he had no idea that Ms. John

4

had a boyfriend and that he did not know the victim. He said that when he got to Ms. John's grandmother's house, he saw Ms. John in a car with a man. He saw the car door open and saw something silver, and he began shooting because he knew it was a gun and that the man meant to kill him. He had no choice but to kill the man. He said that Ms. John took the victim's gun out of the car. Defendant insisted he walked to the scene of the shooting and was never in a car.

Doctor Terry Welke, a physician who works for the Parish Coroner's Office, testified that Mr. Wilson's cause of death was a gunshot to the chest that penetrated the victim's heart. He stated that there was a clear contact wound on the skin surrounding the bullet entry. He opined that the barrel of the gun was placed to the victim's chest when the fatal shot was fired.

We find that the State met its burden of proof that Defendant did not act in self-defense in this case. There were no facts presented to the jury which indicated that Defendant could have reasonably believed his life was in imminent danger and that deadly force was necessary.

In *State v. Patterson*, 10-415, p. 13 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 149, *writ denied*, 11-338 (La. 6/17/11), 63 So.3d 1037, the fifth circuit noted:

> The determination of a defendant's culpability rests on a two-old test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. [*State v.*] *Theriot*, 07-71 at 12, [(La.App 5 Cir. 6/26/07),] 963 So.2d [1012] at 1020. The jury is the ultimate fact-finder in determining whether a defendant proved his condition and whether the State negated the defense beyond a reasonable doubt. *Theriot*, 07-71 at 13, 963 So.2d at 1020.

Furthermore, while discussing self-defense in the case of a second degree murder conviction, this court has held:

> The standard in La.R.S. 14:20 is whether the Defendant's subjective belief that he was in danger was reasonable. *State v. Brown*, 93-1471 (La.App. 3 Cir. 5/4/94), 640 So.2d 488.

5

> Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. *State v. Hardeman*, 467 So.2d 1163 (La.App. 2d Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. *State v. Brown*, 414 So.2d 726 (La.1982).

*State v. Spivey*, 38,243, p. 6 (La.App. 2 Cir. 5/12/04), 874 So.2d 352, 357.

> In cases where the defendant claims self-defense as a justification, the absence of a weapon from the victim's person or immediate reach is often a critical element of the state's proof. *See State v. Davis*, 28,662 (La.App. 2d Cir. 9/25/96), 680 So.2d 1296. . . . The absence of weapon on the victim, however, is not dispositive of the issue.
>
> . . . .

*State in Interest of D.S.*, 29,554, p. 3 (La.App. 2 Cir. 5/7/97), 694 So.2d 565, 567.

*State v. Griffin*, 06-543, pp. 8-9 (La.App. 3 Cir. 9/27/06), 940 So.2d 845, 851, *writ denied*, 07-02 (La. 9/14/07), 963 So.2d 995.

In the case at bar, Defendant admitted that he had never met Mr. Wilson nor did he know of him. Although he stated the victim threatened him on the phone, he did not specify the nature of the threat. There was no evidence Mr. Wilson had a weapon on his person or in the car. The testimony established there were no words spoken. Both Ms. John and the oldest daughter testified that Mr. Wilson yelled for Ms. John to back the car away when he saw Defendant approach with a gun.

In brief, Defendant also discusses manslaughter briefly, but does not indicate how he acted in "sudden passion" or "heat of blood." We find nothing before this

6

court that would have reduced the conviction for first degree murder to manslaughter. However, we agree with Defendant that there was nothing put before the jury that would indicate he was engaged in the perpetration or attempted perpetration of cruelty to a juvenile such that would qualify the offense as first degree murder.

During trial, the trial court discussed with defense counsel and the State the offense of first degree murder and the relevant components with which to charge the jury. The State informed the trial court that the enumerated crime which elevated the intentional shooting to first degree murder was "cruelty to a juvenile."

Cruelty to juveniles is defined, in pertinent part, as "[t]he intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child." La.R.S. 14:93(A)(1).

> The term "intentional" refers to general criminal intent to mistreat or neglect and does not require an intent to cause the child unjustifiable pain and suffering. *State v. Schultz*, 01-995 (La.App. 5 Cir. 4/10/02), 817 So.2d 202, 208, *writ denied*, 02-1320 (La.11/27/02), 831 So.2d 270. General criminal intent is "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." LSA-R.S. 14:10(2); *Id.*
>
> An alternative to proving defendant had general criminal intent to mistreat or neglect the child thereby causing the child unjustifiable pain and suffering is to prove that defendant was criminally negligent in his mistreatment or neglect of the child. Criminal negligence "exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA-R.S. 14:12; *State v. Jackson*, 98-1254 (La.App. 5 Cir. 3/30/99), 733 So.2d 657, 661.

*State v. Chacon*, 03-446, pp. 4-5 (La.App. 5 Cir. 10/28/03), 860 So.2d 151, 153.

7

Finally, and more importantly, in the instant case, the State had to prove unjustifiable pain and suffering. There was no testimony or any other evidence given that indicated that either child was physically injured in any way. This court has held that a victim need not have sought medical attention in order to find unjustifiable pain and suffering. *See State v. C.S.D.*, 08-877 (La.App. 3 Cir. 2/4/09), 4 So.3d 204. Both Ms. John and her daughter testified that Defendant initially hugged and kissed the girl. There was no indication that either child was harmed because of the gunshots to the car, nor was there any evidence introduced that showed the girls had suffered psychological harm.

In *State v. Barr*, 354 So.2d 1344, 1347 (La.1978), the supreme court stated that "'[u]njustifiable pain and suffering' must be understood to mean something more than psychological harm[.]" In *Barr*, the defendant was convicted of cruelty to a juvenile because she abandoned an infant on Bourbon Street in New Orleans. Concluding that the baby suffered no more than a slight separation anxiety, the supreme court noted that "[t]he only evidence of pain and suffering in the record before us (and it is scant and speculative) shows rather minimal distress on the part of the child because of his mother's absence." *Id.* However, the supreme court went on to state, "nor do we hold that psychological harm cannot be 'unjustifiable pain and suffering.'" *Id.*

We are not aware of any case wherein unjustifiable pain and suffering were inflicted on a child because he/she witnessed his/her parent committing a crime. We note that during the interview conducted with the nine year old, she appeared relatively calm. She was hesitant, but gave clear answers to the questions asked. At one point, she stated she hoped they would catch him (Defendant) because Darius was her friend. We find that the evidence adduced at trial as to the children

8

suffering psychological harm does not meet the criteria of "unjustifiable pain and suffering."

The State also argued La.R.S. 14:30(A)(3), and the trial court instructed the jury, in that a person could be convicted of first degree murder if the evidence showed that the offender had the "specific intent to kill or to inflict great bodily harm upon more than one person." La.R.S. 14:30(A)(3). At trial, the State argued that there were several persons in harm's way—particularly, Ms. John, who was sitting in the car at time Defendant began shooting. The State argued that if an offender aims a gun at more than one person, certainly there was specific intent to kill or inflict great bodily harm on more than one person. The State further argued anyone could have been shot. In order to prove the crime of first degree murder committed under La.R.S. 14:30(A)(3), the State had to prove two elements: 1) Defendant killed the victim; and, 2) Defendant had the specific intent to kill or to inflict great bodily harm upon more than one person. *State v. Bourque*, 622 So.2d 198 (La.1993), *overruled on other grounds by State v. Comeaux*, 93-2729 (La. 7/1/97), 699 So.2d 16, *cert denied*, 522 U.S. 1150, 118 S.Ct. 1169 (1998). In *Bourque*, the defendant shot and killed the victim. He argued that he pointed the weapon at the second victim only to keep her from interfering, but that the gun discharged when she knocked it way with her hand. The supreme court stated:

> As stated previously, this court has rejected the idea that R.S. 14:30(A)(3) must be interpreted solely as occurring by a defendant's single act, such as when a bomb explodes in a crowded building. Instead, this court has determined the legislature intended this type of first degree murder to include "those murderers who formed an intent to commit multiple killings and who did in fact create the risk of multiple deaths through a single act *or a closely related series of acts that resulted in at least one death*." [*State v.*] *Williams*, 480 So.2d [721] at 727 [(La.1985)] (emphasis supplied)[.]

*Id*. at 242-43 (footnote omitted).

In the instant case, there was no evidence submitted that Defendant intended to shoot anyone else. While Ms. Jones was in the car with the victim, she never testified that Defendant pointed the gun at her. There was no testimony that either of the children were close by the car when the shooting started. In fact, Ms. John testified the oldest girl was standing on the sidewalk when the shooting started. During the interview at the Children's Advocacy Center, the oldest girl stated that her sister had already walked up to the grandmother's house. There was no testimony that Defendant pointed the gun at either of the girls. State's Exhibit 18, a five by eight photograph of Ms. John's car at the scene of the shooting, showed a series of bullet holes in the hood of Ms. John's car starting in the front of the hood and moving in a line towards the corner of the front windshield on the passenger's side of the car. The bullet holes clearly indicate that Defendant was aiming specifically for the victim. Dr. Welke, with the Coroner's office, testified that the victim died as a result of a clear contact gunshot wound to the chest. Defendant then immediately left the scene without attempting to harm anyone else. We find that there was insufficient evidence presented that Defendant specifically intended to kill or cause great bodily harm to more than one person.

In *State v. Andrews*, 452 So.2d 687 (La.1984), the defendant was convicted of first degree murder under La.R.S. 14:30(A)(3), due to an intent to kill or harm more than one person. The supreme court reduced the charge to second degree murder, finding that "no rational trier of fact could have concluded beyond a reasonable doubt that Andrews, by firing at Patrick, actively intended to kill *both* Patrick and Joel." *Id*. at 689. Andrews had fought with both of the brothers earlier in the day. He obtained a gun and declared he was going to kill both of the brothers. He was able to find only Patrick, whom he shot and killed. He never

10

found the second brother before he was apprehended. The supreme court reduced the conviction, stating:

> This court, pursuant to C.Cr.P. 821(E), has the power to modify the verdict and render a judgment of conviction on a lesser included responsive offense. Second degree murder is a responsive verdict to first degree murder. C.Cr.P. 814(A)(1). R.S. 14:30.1(1) defines second degree murder as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or inflict great bodily harm." Second degree murder carries a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The record clearly supports a conviction on such a charge.
>
> Accordingly, defendant's conviction is modified to second degree murder (R.S. 14:30.1(1)).

*Id.*

In the instant case, based on the evidence presented, particularly the lack of evidence required to convict the Defendant of first degree murder, we vacate Defendant's first degree murder conviction and sentence. However, the evidence in the record clearly and unequivocally establishes beyond a reasonable doubt that Defendant armed himself and drove purposefully to where he knew Ms. John would be picking up the children. He specifically opened fired on a man sitting in Ms. John's car. The evidence further indicated that he placed the gun to the victim's chest and fired the shot which resulted in the victim's death. There was no evidence that the victim had a weapon or in any way acted aggressively towards Defendant. Defendant was the aggressor and was not acting in self-defense. We find the evidence, viewed in the light most favorable to the State, supports only a conviction of the lesser included responsive offense of second degree murder. Therefore, we modify the verdict of guilty of first degree murder, vacate the sentence therefor, and render a judgment of conviction on the lesser included responsive offense of second degree murder. *State v. Ledet*, 96-142 (La.App. 1 Cir. 11/8/96), 694 So.2d 336, *writ denied*, 96-3029 (La. 9/19/97), 701 So.2d 163.

11

*ASSIGNMENT OF ERROR*
*(Excessive Sentence)*

Having vacated Defendant's conviction and sentence of first degree murder and having found him guilty of the responsive verdict of second degree murder, we must remand this matter to this trial court for resentencing on his second degree murder conviction.[1]  Consequently, Defendant's assignment of error alleging excessive sentence is rendered moot.

## DISPOSITION

We vacate Defendant's first degree murder conviction and sentence.  In accordance with La.Code Crim.P. art. 821(E), we render a judgment of conviction on the lesser included responsive offense of second degree murder, a violation of La.R.S. 14:30.1(A)(1), and remand this matter to the trial court for resentencing on his second degree murder conviction.

**FIRST DEGREE MURDER CONVICTION AND SENTENCE VACATED, SECOND DEGREE MURDER CONVICTION RENDERED, AND REMANDED FOR RESENTENCING.**

---

[1]This court is cognizant of the fact and notes that the sentences for non-capital first degree murder (La.R.S. 14:30(C)(2)) and second degree murder (La.R.S. 14:30.1(B)) are identical; however, we must remand the matter to the trial court for resentencing in order to preserve Defendant's right to file whatever post sentence motions he deems appropriate.