874 So.2d 352 (2004)
STATE of Louisiana, Appellee
v.
Morian SPIVEY, Appellant.
No. 38,243-KA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
*354 Gregory G. Elias, Monroe, for Appellant.
Robert W. Levy, District Attorney, Clifford R. Strider, III, Stephen K. Hearn, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, MOORE and LOLLEY, JJ.
STEWART, J.
Morian Lavelle Spivey ("Spivey") was convicted by a jury of second degree murder and was sentenced to life at hard labor without benefit of probation, parole or suspension of sentence. For the following reasons, we affirm his conviction and sentence.

FACTS
On September 13, 2001, Morian Lavelle Spivey was driving through the campus of Grambling State University on his way to *355 get a haircut. He was not a student at the school. He encountered the victim, a student named Samuel Washington, III. They argued and then began to fight. Although Spivey was significantly larger than the victim, Washington knocked him to the ground after Spivey shoved him. Three of the victim's friends, Rodney Bridgewater, Phillip Madison and Michael Theus, were parked near the scene of the fight and joined it to assist Washington.
Curtis Armand, a university administrator, was driving down the street and noticed the fight. He got out of his vehicle and yelled for the men to stop fighting. After the fight broke up, the victim and his friends were running off when Spivey walked to his vehicle, got a gun, and shot Washington.
Aiesha Dicko, a student who was riding in a car on her way to Truth Hall, testified she saw people running. She testified that she saw Washington run in front of the car and up a little hill when he slipped and lost his balance. She saw that while he was hunched over, he was shot by Spivey.
The one shot hit the victim in the chest. Betty Jones Farmer, a nursing instructor at the university, testified about how she ran to the scene and rendered first aid. Efforts to resuscitate Washington failed.
A 9-millimeter shell casing was recovered from the scene by Cornelius Gillis, a member of the Grambling State University Police Department. The weapon was never recovered. Larry C. Garner, an acquaintance of Spivey, testified that on the day of the incident Spivey asked him if he could leave his vehicle parked at his house because he had been in a confrontation on campus. Greg W. Ludley, a Grambling State University police office, was assigned the task of finding the vehicle Spivey drove away from the scene. He testified that it was found at Garner's residence. He said it was hidden from view from the street because it was parked two feet from the house.
The defense called Bridgewater, Madison and Theus as witnesses in an attempt to show that Spivey was afraid of the victim because of a prior altercation between them. It appears that this trial strategy was also an attempt to show that Washington was the aggressor and Spivey acted in self-defense. Instead, the testimony of these three participants in the fight showed that Spivey had been the aggressor with a gun in a fight with Madison in the wee hours of Sunday morning before this incident on the campus. Bridgewater's testimony further showed that Spivey started the physical fight on campus by shoving the victim during an argument. Their testimony also matched that of the state's witnesses who said the fight broke up and the victim ran away from Spivey.
The jury found Spivey guilty of second degree murder. He filed a motion for new trial and a motion for post-verdict judgment of acquittal. Both motions were denied, and he was sentenced to life. This appeal ensued.

DISCUSSION
Sufficiency of Evidence
Spivey asserts that the trial court erred and abused its discretion when it failed to grant his motion for a new trial and/or judgment of acquittal. He asserts that the evidence presented was not sufficient for a finding of second degree murder, and that it presented a serious question of self-defense. Spivey argues that the participation of the victim's three friends in the fight caused the level of the confrontation to rise to the point that Spivey could reasonably believe that he was in imminent danger of death or great bodily *356 harm and that he was justified in believing that it was necessary to kill in order to save himself from danger. He contends that, at a maximum, the evidence shows that he may have been guilty of manslaughter and that his conviction and sentence should be reduced accordingly.
The state argues that Spivey was the aggressor in the fight and at the time of the shooting because the victim and the others fighting him had turned and run away from the fight, thus eliminating the possibility that the shooting was done in self-defense. The state asserts that Spivey did not prove the mitigating circumstance of heat of blood since the fight was over and Spivey was no longer in danger when he went to his car and got the gun.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
The question of sufficiency of evidence was properly raised by a motion for post-verdict judgment of acquittal. See State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, rehearing denied, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190. The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988).
Second degree murder is defined in La. R.S. 14:30.1 as:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Ellis, 28,282 (La.App.2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521. Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020; State v. Ellis, supra; State v. Knowles, 598 So.2d 430 (La.App. 2d Cir. 1992). The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Knowles, supra.
In State v. Murray, supra, this court reiterated its holding in State v. Hudson, 33,357 (La.App.2d Cir.5/10/00), 760 So.2d 591, that sets forth the law applicable to a *357 claim of justifiable homicide because of self-defense:
Self-defense is justification for a killing only if the person committing the homicide reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20(1); State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App. 1st Cir.1992), writ denied, 92-2351 (La.5/12/95), 654 So.2d 346. The state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Arnold, 30,282 (La.App.2d Cir.1/21/98), 706 So.2d 578.
However, we note that under La. R.S. 14:21, a person who is the aggressor cannot claim the right of self defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw from the conflict.
For a homicide to be justified, the offender must have had a reasonable belief he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary, under the circumstances, to save himself from that danger. La. R.S. 14:20(1); State v. Dozier, 553 So.2d 911 (La.App. 4th Cir.1989), writ denied, 558 So.2d 568 (La.1990).
Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. State v. Brown, 414 So.2d 726 (La.1982).
Manslaughter is a lesser included offense of second degree murder. La. C. Cr. P. art. 814 A(3). A homicide which would otherwise be second degree murder is manslaughter when it is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. "Sudden passion" or "heat of blood" are not elements of the crime of manslaughter, but are mitigating factors in the nature of a defense which exhibit a degree of culpability less than that present when a homicide is committed without them. State v. Scott, 31,379 (La.App.2d Cir.10/28/98), 720 So.2d 415, writ denied, XXXX-XXXX (La.5/14/99), 741 So.2d 664, reconsideration denied, XXXX-XXXX (La.9/3/99), 747 So.2d 529; State v. Stewart, 26,168 (La.App.2d Cir.8/17/94), 641 So.2d 1086, writ denied, 94-2363 (La.1/13/95), 648 So.2d 1337. Also, State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993).
A defendant is required to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" for a verdict of manslaughter to be appropriate. State v. Lombard, 486 So.2d 106 (La.1986); State v. Robinson, 32,794 (La.App.2d Cir.3/01/00), 754 So.2d 311, writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 1008, citing McCray, supra. In reviewing a defendant's claim that he has met that burden, the appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigatory factors had not been established by a preponderance of the evidence. Lombard, supra; State v. Robinson, supra; State v. Lewis, *358 28,973 (La.App.2d Cir.12/11/96), 685 So.2d 1130, writ denied, 97-0122 (La.5/16/97), 693 So.2d 797. Also, State v. Scott, supra.
Spivey's argument that this killing was done in self-defense is not supported by the record. The jury heard direct evidence that the victim was shot while he was fleeing from Spivey. The first witness called by the state was university administrator, Curtis Armand, who testified that on the day of the shooting he was driving through the campus on his lunch break. His testimony is compelling. He stated that he saw, "four fellows in a fight ... I think it was three and one. I am almost certain." He then stopped his vehicle, got out, and yelled "Young men, stop fighting... Cut it out." He further testified that when he did, the fight broke up and three of the men started running. Armand stated, "And when they ran, I saw a young man who did not run. He went to his car, and he reached down in his car and came up with a gun. I said, `Young man, put that gun down'." Armand testified that Spivey did not turn to look at him or acknowledge that he was there, but instead briskly walked past him. Armand stated that ten seconds later he heard a shot. He further testified that Spivey then came back past him, got in his car and left the scene. Armand recalled that Spivey appeared very calm both before and after the shooting.
Armand had testified that he had not seen the actual shooting because he was standing beside his car. His inability to see the victim being shot was explained by the testimony of Aiesha Dicko. Dicko testified that she saw the victim running away when he then slipped going up a little hill and lost his balance. She testified that while Washington was hunched over, Spivey shot him.
The medical examiner who conducted the autopsy explained his findings regarding the angle the bullet entered Washington's body. He opined that the shooter was not facing the victim and that the shot was not horizontal, but rather at a 20-30 degree downward angle. He testified that the shooter would have to be on the ceiling to achieve this angle if the two men had been standing face-to-face. The testimony of these people shows that the victim was not standing facing Spivey when the shooting took place. This evidence controverts Spivey's position that he fired the shot in self-defense.
The evidence supports the conclusion that Spivey was the aggressor in the fight. Spivey called the participants in the fight, Bridgewater, Theus and Madison, to testify. Bridgewater said that Spivey pushed the victim first. The testimony of these three friends of Washington appears to be very candid. Bridgewater and Theus were forthcoming in the details about how they joined in the fight to assist the victim. It appears that they entered the fight because Washington was only 5'4" and Spivey was bigger. They discussed hitting and kicking Spivey while he was on the ground. The record is clear that the fight was a three-against-one brawl and that Spivey lost the fight. The record is also clear that after the fight had ended, the victim was running away from Spivey.
All of the testimony points to the conclusion that the fight could not have lasted over three to four minutes. The shooting took place immediately after the fight, but after Spivey had time to walk a short distance to his vehicle and retrieve his gun. While not much time elapsed between the fight and the shooting, it is the function of the trier of fact to determine whether or not a reasonable person would have cooled off rather than shoot the victim.
The jury obviously chose to believe the testimony of Armand, Bridgewater and Dicko. Their testimony established that *359 Spivey was the aggressor in the incident, that the fight had ended and that he then very calmly and methodically shot Washington who had fallen in his attempt to flee Spivey. Thus, the evidence adduced at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Spivey had the specific intent to kill or cause great bodily harm and that the crime was not committed in self-defense. This assignment of error lacks merit.
Motion to Strike Jurors
Spivey argues that three jurors should have been released for cause since one knew the assistant district attorney and had sought legal advice from him, one was a friend of the assistant district attorney's girlfriend, and another had actively supported the district attorney. The state argues that Spivey is barred from raising this issue as an assignment of error since the adverse rulings were not objected to at the time they were made.
A trial court is vested with great discretion in ruling on challenges for cause, and its rulings should be reversed only when a review of the entire voir dire reveals that the trial court abused its discretion. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683. Under La. C. Cr. P. art. 800(A), an appellant is barred from raising as error an adverse ruling on a challenge for cause if no objection was made at the time of the ruling. It states:
A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.
See also State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683.
The record shows that the defense counsel failed to object after the denial of his three challenges for cause. Nonetheless, our examination of the three jurors at issue reveals no error by the trial court or prejudice to the defendant.
Juror Ronnie Sanderson was subjected to voir dire examinations by the trial court, the state, and defense counsel. Sanderson told the trial court that he knew Steven Hearn, an Assistant District Attorney. However, Sanderson stated that there was no "personal, business, family, health, or any other reason why could he could not give the defendant and the state a fair trial in this case and decide this case based solely upon the evidence presented and in accordance with the law." There is nothing in the voir dire which indicates that Sanderson was not truthful in statement of his ability to be impartial. Consequently, we find no abuse of discretion by the trial court.
Prospective juror Melinda Pratt was challenged because she was friends with one of the prosecutor's fiancé. Pratt was also subjected to voir dire examinations by the trial court, the state, and defense counsel. She indicated that there was no reason why she could not be fair. Her interaction with the prosecutor was tenuous at best, because they only had limited interaction.
Juror Tommie Jackson was also challenged, based on his alleged friendship with District Attorney Bob Levy. Jackson was also subjected to voir dire examinations by the trial court, the state, and defense counsel. Jackson stated that he has known the District Attorney for several years, and had placed campaign signs supporting Levy in his yard. However, Jackson also stated that he could be fair and impartial.
We find no showing of abuse of discretion with the trial court not disqualifying any of the above jurors. Consequently this assignment has no merit.
*360 Batson Challenge
Spivey contends that the court's failure to sustain the defendant's Batson challenges made by the defense due to the State's pattern of using peremptory strikes to eliminate black jurors was manifestly erroneous and an abuse of discretion. He argues that the state's use of peremptory strikes to eliminate black jurors shows that the state was not using these strikes in a race neutral method. The state argues it sought to have the jurors removed for race-neutral reasons supported by the record.
The United States Constitution prohibits the state from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Louisiana law codifies the Batson ruling in La. C. Cr. P. art. 795(C), which reads:
No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
When a defendant makes a Batson challenge, claiming the state has used peremptory challenges in a manner which violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's race. State v. Jackson, 29,470 (La.App.2d Cir.8/20/97), 707 So.2d 990; State v. Loper, 00-1936 (La.App. 5th Cir.12/26/01), 807 So.2d 316, 323. If the defendant fails to make a prima facie case, then the challenge fails. If a prima facie case is established, the burden shifts to the state to come forward with a race-neutral explanation for its peremptory challenges. Once the prosecutor has satisfied the second step of the Batson review, by providing a race-neutral reason, the trial court then has the duty to determine whether the defendant has established purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724; State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272; State v. Banks, 96-652 (La.App. 5th Cir.1/15/97), 694 So.2d 401, 409. A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so those findings are entitled to great deference by the reviewing court. State v. Jones, 00-162 (La.App. 5th Cir.7/25/00), 767 So.2d 862, writ denied, 00-2484 (La.6/22/01), 794 So.2d 783.
In State v. Green, supra at 288, the Louisiana Supreme Court discussed how a defendant may establish his prima facie case:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect *361 class which is alleged to be the victim of purposeful discrimination.
The state need not give an explanation for its use of a peremptory challenge if the trial court does not find that the defense has made a prima facie case, but many trial courts require this to create a complete record. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).
At trial, the defense attorney objected when the state used three peremptory challenges in a row to strike black female jurors. The trial court overruled the initial Batson challenge. A subsequent challenge was renewed when the state moved to strike two more black jurors.
Both at trial and in his argument to this court, Spivey's counsel concludes that moving to strike three, and ultimately five, black women from the jury is proof that the state was excluding these jurors on race alone.
The defense initially raised the challenge when the state moved to consecutively strike Waleta Cooper, Linda Wright, and Wanda Lewis, who are three black females, from the jury pool. The court suggested, and the defense agreed, to continue the process before argument on the issue. The court later allowed the defense to present its challenge. When the challenge was made, the trial court referenced its notes and supplied what it believed to be non-racial reasons why the jurors would not be acceptable. Specifically, the court found that Waleta Cooper knew the defendant and his family; Linda Wright could not apply a reasonable-doubt standard; and both Wanda Lewis and Wright had heard discussions about this case. He then ruled that the defendant had not made a prima facie showing of discriminatory use of the challenges. The trial court then gave the state an opportunity to put its reasons on the record.
The jurisprudence is clear that the "ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory exception." State v. Tyler, 97-0338 (La.9/9/98), 723 So.2d 939, cert. denied, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999).
A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so those findings are entitled to great deference by the reviewing court. State v. Jones, supra.
In sum, given the deference due the trial court's determination, and the defendant's failure to make any argument other than citing bare statistics and the voir dire responses, we find that the trial court's decision that defendant failed to establish a prima facie case of racial discrimination was not an abuse of discretion.
Denial of Continuance
Spivey further contends that the court's ruling denying the defendant a continuance based on evidence that was not discovered until the trial had commenced was manifestly erroneous and an abuse of discretion. He argues that the court should have granted a continuance or done an in camera inspection of some recorded statements by witnesses that neither the state nor Spivey knew existed before the trial started. The state argues that Spivey should have sought a recess in order to review the tapes.
La. C. Cr. P. art. 708 states:
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
While questioning Bridgewater, one of the participants in the fight, the defense's *362 trial attorney learned that this witness had given a taped statement to the Grambling State University police. Based on the information that evolved during the discussion about this statement, it is apparent that the state was unaware that such a taped statement had been made. The state had provided a written statement made by this witness to the defense attorney.
The defense attorney asked for a continuance. The trial court overruled this request and informed the defense counsel that he was not entitled to recorded statements made by witnesses. The court then instructed the state that it had a continuing obligation to furnish any exculpatory evidence to the defendant. The state indicated that it was unaware that there were any taped statements and the trial continued. After the noon recess, the state reported to the court that tapes did exist but they did not appear to contain any exculpatory information. The state then suggested that the court take a recess to allow the defendant's trial counsel to listen to the tapes. The defense attorney again sought a continuance to have adequate time to prepare the defense. Instead, the court granted a one and one-half hour recess.
When the court convened later that afternoon, defense counsel then complained that he had not had an opportunity to finish listening to all of the tapes and that he was not sure about the authenticity of the tapes. He further argued that he needed to listen to the tapes before he finished with the testimony of Bridgewater, Theus and Madison to see if the information on the tapes contradicted what they had testified to at trial. The court overruled the objection, but allowed the witnesses to be questioned out of order so that the defense counsel could continue listening to the tapes. The following day, defense counsel stated that he had been furnished the tapes, but still had not had an opportunity to listen to all of them. The trial court commenced with the trial.
The trial court was correct to proceed with trial under these circumstances. La. C. Cr. P. art. 723 clearly states that statements of persons other than the defendant are not discoverable. It states:
Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.
In what appears to be an abundance of precaution, and at the suggestion of the state, the trial court allowed the defense to have these statements. However, three weeks after the trial, we note that the defense attorney still had not finished listening to the tapes. As part of his argument for a new trial, defense counsel stated that the trial court had not given him adequate time to review those statements.
In his argument to this court, Spivey states that the trial court should have conducted an in camera inspection of the tapes so the "defendant would have had an independent review and opinion of whether there was exculpatory or any other relevant evidence contained in the recordings." There obviously is no need for a court to conduct an in camera review of this material since it had been given to defense counsel.
The trial court correctly overruled both the request for the continuance and the motion for new trial on this point. The defense counsel has not shown that the *363 material is exculpatory and La. C. Cr. P. art. 723 clearly excludes statements made by witnesses or prospective witnesses. Consequently, this assignment of error has no merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.