NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-85

STATE OF LOUISIANA

VERSUS

DESMOND DANGELO DUGAS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 87538
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Candyce G. Perret, and Jonathan W. Perry, Judges.

AFFIRMED WITH INSTRUCTIONS.

Chad M. Ikerd
Louisiana Appellate Project
P. O. Box 2125
Lafayette, LA 70502
(337) 366-8994
COUNSEL FOR DEFENDANT-APPELLANT:
    Desmond Dangelo Dugas

**Donald D. Landry**
**District Attorney - Fifteenth Judicial District**
**Burleigh G. Doga**
**Assistant District Attorney**
**P. O. Box 288**
**Crowley, LA 70526**
**(337) 788-8831**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PICKETT, Judge.**

## FACTS

On July 22, 2017, the defendant, Desmond Dangelo Dugas, was planning to sell a car for scrap.  According to the defendant, he contacted the victim, Blake Jones, to have Jones use his truck to pull the derelict vehicle to the scrapyard.  The defendant testified at trial that he had agreed to pay Jones twenty dollars for his help.  Jones arrived with another friend, Jonathan Istre, and the trio, along with the defendant's uncle Charlie, towed the old car to a scrapyard.  The scrap business paid the defendant approximately one hundred and fifty-six dollars for the car.

The group returned to the defendant's house.  After the defendant was out of the truck, Istre demanded more money.  As tempers rose, the defendant tried to show Blake and Istre his receipt from the scrapyard.  The men inside rolled up the window and began to pull away.  The defendant stated that the passenger-side mirror hit his shoulder, then the fender struck his hip, and he fell into a nearby ditch. According to the defendant, when he stood back up, and was out of the ditch, the truck was to his right, "a couple of feet" away from him. Jones put the truck into gear and began to drive forward; the defendant pulled a gun from his pocket and fired.  A couple the defendant knew was parked nearby.  The defendant jumped into the car with them, and they left the scene. Police apprehended him soon thereafter.  Medical testimony at trial established that the victim died due to a gunshot wound to the head.

On September 27, 2017, an Acadia Parish Grand Jury indicted the defendant for the offense of second degree murder, a violation of La.R.S. 14:30.1, and illegal possession of a stolen firearm, a violation of La.R.S. 14:69.1.  The state later dismissed the firearm charge.  The defendant filed a motion to suppress on October 4, 2018, arguing the state failed to prove the admissibility of his statements to

police or of video surveillance footage obtained by police. At a hearing on November 12, 2018, the district court denied the motion insofar as it addressed the video surveillance footage. The defendant did not seek review. In a separate hearing on February 14, 2019, the district court denied the motion insofar as it addressed the defendant's statements to police. He sought review of the latter ruling, and this court denied relief. *State v. Dugas*, 19-415 (La.App. 3 Cir. 9/11/19) (unpublished opinion).

On February 11, 2020, the parties began selecting a trial jury. The following day, the defendant filed a motion to quash the venire due to the lack of black members. The district court denied the motion. The parties completed jury selection, and said jury began hearing evidence. On February 14, it found the defendant guilty as charged in a unanimous verdict.

The court addressed the defendant's motions for post-verdict judgment of acquittal and for new trial in a hearing on August 24, 2020, and denied both. The defendant waived statutory delays for sentencing. After hearing argument, the court sentenced him to the mandatory term of life imprisonment without benefit of probation, parole, or suspension of sentence.

The defendant now appeals, assigning six errors.

## ASSIGNMENTS OF ERROR

1. The State failed to sufficiently prove that Desmond Dugas was guilty of second-degree murder. The evidence showed he was justified in defending himself, and thus, should have been found not guilty.

2. Alternatively, if the Court finds Desmond Dugas' actions did not rise to the level of justifiable homicide, Desmond should have been found guilty of the lesser included offense of Manslaughter.

3. The trial court erred in denying the motion to suppress videos and statements made by Desmond Dugas during custodial interrogations. Officers did not properly Mirandize Desmond and inform him of his rights. An officer read a form from his iPad quickly to Desmond, who

2

signed it without reading or checking off that he understood his constitutional rights.

4. The transcripts in the record are demonstratively unreliable. Even after a second review of the audio recordings, there continues to be problems with the transcripts. Further, key transcripts of voir dire could not be verified and clearly show gaps of missing conversations. Appellate counsel cannot reasonably rely on the record to know whether other errors exist or were properly preserved. Thus, Desmond Dugas' right to appellate review has been compromised and [a] new trial should be ordered.

5. This Court should remand the case for a hearing on the racial makeup of the petit jury venire. The defense timely filed a motion to quash the venire based on the fact that only two African Americans responded to the summons and were actually eligible for jury duty, although one was struck for cause and the other was never questioned because the jury was selected beforehand. The record is incomplete, and a further evidentiary hearing is necessary to determine the nature of venire selection and why the jury pool was so unrepresentative of Acadia Parish.

6. The trial court erred in instructing Desmond Dugas of his rights for pursuing post-conviction relief. Specifically, the court failed to properly explain when the timing of his rights begins.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent regarding the trial court's advisement of La.Code Crim.P. art. 930.8's time period for filing post-conviction relief. Since the error has been alleged as error in assignment of error number six, we will address it as such.

## ASSIGNMENT OF ERROR NUMBERS ONE AND TWO

The defendant's first two assignments of error are related. In the first, he argues that the evidence adduced at trial was insufficient to prove he was guilty of second degree murder. He does not contest that he killed the victim. However, he claims the killing was justified because it was done in self-defense. In his second assignment of error, he makes an alternative argument that he should have been

3

found guilty of a lesser-included offense, manslaughter. When self-defense is pled by a defendant, the burden is on the state to prove that the defendant did not act in self-defense. *State v. Patterson*, 295 So.2d 792 (La.1974).

Regarding the sufficiency of the evidence as it relates to a self-defense claim, this court set forth the well-established general analysis for such claims:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant does not deny that he shot and killed the victim, nor did he deny it at trial. Rather, he argues that the State failed to disprove that he acted in self-defense. Killing in self-defense is governed by La.R.S. 14:20(A), which states, in pertinent part, "[a] homicide is justifiable: (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm *and* that the killing is necessary to save himself from that danger." (Emphasis added).

Defendant contends that the killing was justifiable because he had his back against the wall, and was surrounded by the victim and the victim's two friends, Doucet and Jones. Further, he contends that shooting the victim was the only way he could escape.

The Defendant's claim that Jones had a firearm was disputed by both Doucet and Jones at trial. The evidence given by his own mother

4

defeats his claim of justifiable self-defense. The essence of his defense is that he was justified in responding to an attempted punch by shooting his opponent in the chest at close range. We recognize that Dejean had two friends with him. Thus, Defendant may have genuinely felt endangered; further, some level of fear was objectively reasonable. However, the level of force he used to defend himself was far beyond what was necessary under the circumstances.

In the context of self-defense in a manslaughter prosecution, our court has observed in *State v. Griffin*, 06-543, pp. 12, 14 (La.App. 3 Cir. 9/27/06), 940 So.2d 845, 851, 854, *writ denied*, 07-2 (La.9/14/07), 963 So.2d 995, the following:

> The State had the burden of proving the defendant did not stab Marcus Conway in self-defense; therefore, we must determine whether the defendant reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that killing Marcus was necessary to save himself from that danger. The standard in La.R.S. 14:20 is whether the defendant's subjective belief that he was in danger was reasonable. *State v. Brown*, 93-1471 (La.App. 3 Cir. 5/4/94), 640 So.2d 488.

> Factors to consider in determining whether the defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. *State v. Hardeman*, 467 So.2d 1163 (La.App. 2d Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether the defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. *State v. Brown*, 414 So.2d 726 (La.1982).

> *State v. Spivey*, 38,243, p. 6 (La.App. 2 Cir. 5/12/04), 874 So.2d 352, 357.

*State v. Mincey*, 08-1315, pp. 2-3 (La.App. 3 Cir. 6/3/09), 14 So.3d 613, 614-15.

As *Mincey* demonstrates, even when the defendant has a reasonable fear of harm from the victim, a self-defense claim will fail if the force employed by said defendant is excessive in proportion to the threat or harm presented by the victim. In the present case, surveillance video of the incident showed that any potential threat to the defendant was dissipating, since the front of the truck had already

passed by the defendant when he shot into the vehicle. Also, although he equivocated on details, the defendant's own testimony indicated that the front of the truck had passed him at the time he fired his weapon. As noted above, the defendant testified that the victim struck him with the truck and knocked him down shortly before the shooting. However, there was no credible danger to the defendant at the time he pulled the trigger. Under *Mincey*, his response to the situation was clearly disproportionate. Thus, the first assignment of error lacks merit.

Regarding the second assignment of error, similar reasoning applies. Louisiana Revised Statutes 14:31(A)(1) defines manslaughter:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

The defendant claimed before trial, and during his testimony, that as the victim backed out of the driveway, he struck the defendant with the side mirror and knocked the defendant down with the fender of the truck. The video evidence does not show this part of the event, as the camera was on the side away from where the defendant assertedly fell. However, even taking his statements on this point as true, the jury could conclude that the provocation alleged by the defendant was not sufficient to "deprive an average person of his self-control and cool reflection[.]" *Id.* Again, the undercurrent of this reasoning resembles the principle of *Mincey,* 14 So.3d 613, as normal anger or fear neither justifies nor mitigates homicide.

For the reasons discussed, the second assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the defendant argues the district court erred by denying his motion to suppress recorded statements he made to police during custodial interrogations, as he was not properly *Mirandized*.[1] Similarly, he alleges that this court erred in affirming the district court's ruling in an earlier writ. He argues the state failed to demonstrate that he was properly advised of his constitutional rights, that he understood said rights, and that he was fully advised of the reason for his arrest and questioning.

As the defendant acknowledges, he previously brought these arguments to this court in a pretrial writ, which was filed on June 5, 2019. This court denied his application on September 11, 2019, finding no error in the district court's ruling. *State v. Dugas*, 19-415 (La.App. 3 Cir. 9/11/19) (unpublished writ disposition). The defendant argues that this court can and should revisit the issue because the writ denial was equivalent to a decision to decline jurisdiction.

He cites a recent case from this court, *State v. Bryant*, 21-240 (La.App. 3 Cir. 12/22/21), 333 So.3d 495, in which this court reviewed an assignment of error despite the fact that the defendant had previously brought the same arguments to this court in a pretrial writ. *Bryant* relied on a Louisiana Supreme Court case from 2003:

> The court of appeal erred in holding its earlier writ denial resolved the issue presented on appeal. . . . [O]nce a court of appeal declines to exercise its supervisory jurisdiction by denying the writ, the court was without jurisdiction to affirm, reverse or modify the judgment of the trial court. Thus, any language in the court of appeal's earlier writ denial purporting to find no error in the trial court's certification ruling is without effect.

---

[1] Before a person may be questioned in a custodial interrogation, he must be advised that he has the right to remain silent, that anything he says can be used against him in court, that he has a right to an attorney, and that if he cannot afford to hire an attorney one will be appointed to represent him. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630 (1966).

*Davis v. Jazz Casino Co., L.L.C.*, 03-276, 03-1223, p. 1 (La. 6/6/03), 849 So.2d 497, 498 (per curiam). In view of *Davis*, the panel in *Bryant* decided that the law-of-the-case doctrine did not apply to bar review of issues that had been raised in a pretrial writ.

We note that *Davis* did not address the foundations of the "law of the case" doctrine.

As the fourth circuit has explained:

> The State contends that because this Court already considered these issues and found no error in the trial court's decision, the law of the case doctrine should apply to preclude any further consideration of the defendant's arguments.
>
> Under the law of the case doctrine, appellate courts have held they have discretion to not reconsider a previously-decided issue unless they find the previous decision is based on palpable error or that manifest injustice would occur. *Pitre v. Louisiana Tech University*, 95-1466 (La.5/10/96), 673 So.2d 585, 589; *Zatarain v. WDSU Television*, 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181.
>
> The "law of the case" doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process. *See Brumfield v. Dyson*, 418 So.2d 21 (La.App. 1 Cir.1982). This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reason[] for the "law of the case" doctrine is to avoid relitigation of the same issue; to promote consistency of the result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. *Day v. Campbell-Grosjean Roofing and Sheet Metal Corp.*, 260 La. 325, 256 So.2d 105 (1971).
>
> As noted in *State v. Gillet*, 99-2474, p. 5 (La.App. 4 Cir. 5/10/00), 763 So.2d 725, 728-29:
>
>> This Court has stated that "an appellate court will not reverse its pretrial determinations . . . unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result."

*State v. Molineux*, 11-275, pp. 3-4 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, 619, *writ denied*, 11-2556 (La. 3/30/12), 85 So.3d 117. *See also Trahan v. State ex rel.*

8

*Dep't of Health & Hosp.*, 04-743 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245, 1250. To the extent that the appellate court in *Davis* appeared to use the doctrine as a bar to re-examination of previously presented claims, the supreme court has certainly ruled against such a bar. However, this court has continued to apply the doctrine as a discretionary tool of judicial economy, as explained in *Molineux*. The present case provides another illustration of the need for the use of the doctrine in some form. Relying on *Bryant* and *Davis* to allow him to reach the merits of the assignment, the defendant seeks to raise the arguments he has previously put before this court.

After reviewing the arguments put forth by the defendant, and both the statements sought to be excluded and the circumstances surrounding the taking of those statements, we find no palpable error in the previous ruling by the writ panel and find no manifest injustice will occur by relying on the ruling in the defendant's writ.

We therefore decline to revisit that issue. This assignment of error is without merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, the defendant argues that some of the transcripts are inaccurate, particularly those depicting jury selection and sentencing. Appellate counsel consulted with trial counsel, who apparently had possession of preliminary transcripts which did not match portions of the record. Appellate counsel filed a "Motion for Review and Supplementation of the Record," and on March 10, 2021, this court issued an order that the three court reporters review the audio tapes and either provide affidavits attesting to the accuracy of the existing transcripts or produce new verbatim transcripts. One of the reporters, Mary Jane Moreau, responded with an affidavit of accuracy dated

9

March 15, 2021. A new court reporter, Tonya Cormier, responded and requested multiple extensions during the passing months, as she was replacing one of the original reporters, who had retired. The various extension requests and a notation at the beginning of the new transcripts indicated that Cormier had to work with audio recordings and no notes. A third reporter, Janice Ann Plaisance, submitted a letter along with new copies of the sentencing transcripts. The letter is not an affidavit but appears to vouch for the accuracy of the transcripts. However, it is not immediately clear whether the new copies were in fact new or re-done transcripts.

We have reviewed the voir dire and sentencing transcripts in reference to this assignment of error and reviewed the trial transcript in reference to the first two assignments of error. Although the defendant alleges the sentencing transcript is incorrect in stating that trial counsel did not object to the sentence, he does not allege that any prejudice has resulted from this, and none of his assignments of error address the sentence. He alleges no inaccuracies in the trial transcript and we encountered none of any significance while assessing the first two assignment of error.

However, the defendant notes that in the voir dire transcripts there are eight pages for which Cormier had no audio and thus was unable to verify that section of the transcript. He argues there is material missing regarding the selection of the final juror, Lisa Istre. He also asserts that it is impossible to verify whether he used all of his peremptory challenges. He correctly notes they must be exhausted in order for him to be able to challenge district court rulings on any of his cause-based challenges.

Both parties cite *State v. Landry*, 97-499, pp. 2-3 (La. 6/29/99), 751 So.2d 214, 215-16 (footnote omitted) which stated, in pertinent part:

We have reversed convictions when material portions of the transcript were either incomplete or unavailable. In *State v. Ford*, 338 So.2d 107, 110 (La.1976), a second-degree murder conviction in which appellate counsel did not serve as trial counsel and the court reporter failed to record the testimony of four state witnesses, voir dire, and the State's opening statement, we held: "Without a complete record from which a transcript for appeal may be prepared, a the defendant's right of appellate review is rendered meaningless." Similarly, in *State v. Jones*, 351 So.2d 1194 (La.1977), we held that the omission of a portion of the hearing on a motion for change of venue was not an "inconsequential omission" and required reversal because it was impossible to assess the existence of community prejudice or to ascertain whether the evidence supported the defendants contention that the motion was improvidently denied. Again, in *State v. Parker*, 361 So.2d 226 (La.1978), reversal was required when the transcript of the closing argument could not be prepared and the defendant assigned as error the State's closing argument. Likewise, in *State v. Rooney*, 187 La. 256, 174 So. 348 (1937), we reversed the defendant's conviction and sentence, finding that the transcript relative to the defendant's bill of exceptions was so defective that it made presentation of an appeal impossible.

In the present case, as in *Ford*, we are faced with an appellate counsel who did not serve as trial counsel. A criminal defendant has a right to a complete transcript of the trial proceedings, particularly where counsel on appeal was not counsel at trial. *U.S. v. Atilus*, 425 F.2d 816 (5 Cir.1970) citing *Hardy v. U.S.*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964). "[W]here the defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully recorded trial." *State v. Ford*, 338 So.2d at 110.

From the outset, we are faced with assignments of error relative to voir dire examination that we cannot resolve on the present record. Although the State asserts there are no defense objections recorded during jury selection, appellate counsel adroitly points to numerous defense counsel remarks which were transcribed as, "I [INAUDIBLE]." Furthermore, the record is replete with "(INAUDIBLE)" responses during critical portions of voir dire which make it impossible to ascertain why certain jurors were excluded. To worsen matters, not only are questions shown as inaudible, but the record indicates that the inaudible responses were made by unidentified jurors. . . . When we consider that there were approximately forty jurors excluded for cause, there is almost nothing to justify the various exclusions because of the incomplete record. Clearly, on the deficient record before us, we cannot assure that no erroneous excuses for cause were made.

11

The supreme court has also stated: "The defendant will not be entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record." *State v. Campbell*, 06-286, p. 99 (La. 5/21/08), 983 So.2d 810, 873, *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607 (2008).

Although counsel in the present case was not trial counsel, he acknowledges that he communicated with trial counsel. As noted earlier, this communication led to the discovery of the problems with the transcripts. Despite having contact with trial counsel, current counsel makes no specific allegation that any challenge for cause was improperly denied or that any particular juror should not have been seated. As noted above, there are problems with some of the transcripts, but the defendant has not demonstrated that those problems prejudiced him. For this reason, the assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth assignment of error, the defendant argues this court should remand the case for a hearing on the racial composition of the trial jury venire. The parties appear to agree on the procedural facts related to this assignment of error. As both briefs recount, the defendant filed a motion after the first day of jury selection alleging that out of "50 potential jurors [who] appeared and were qualified to serve . . . only 2 were black." The parties appear to agree that the population of Acadia Parish, where the trial occurred, is approximately eighteen percent black. The district court reached this figure at the hearing on the motion, and it noted that out of three hundred members on the venire list, fifty-four were black. As the court further noted, fifty-four is approximately eighteen percent of three hundred. After the court had already ruled, the defendant argued that only two black venire members had actually appeared and that this was "statistically unlikely." The court observed that a third potential venire member who was black

12

did not appear because he exercised his age exemption. The court suggested that a fourth was ill. The court did not go into further detail, probably because it had just observed that it had ruled and was ready to "move on."

As the state observes, the selection of a trial jury from a cross-section of the community is a core component of the constitutional right to a jury trial. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692 (1975). We note that pursuant to La.Code Crim.P. art. 419(A), "A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason . . . unless persons were systematically excluded from the venires solely upon the basis of race." The burden of proof is on the defendant seeking to set aside the venire. *State v. Lee*, 559 So.2d 1310 (La.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1431 (1991). This structure is congruent with analysis cited by the state:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668 (1979).

After trial, the defendant filed a motion for new trial which included a renewed argument that the jury venire did not properly represent a cross-section of the community. In support, he offered a statistical report from a mathematics instructor from Baton Rouge Community College. The instructor was not present. The state objected, and the court did not allow the defendant to enter the report into evidence. Instead, the report was entered as a proffer. The parties and the court discussed the same issue at the core of the earlier hearing on the motion to quash, i.e., that the black population of Acadia Parish is eighteen percent of the total, and

13

eighteen percent of the venire subpoenaed was also black – but only two black potential jurors were present for voir dire.

The defendant's counsel stated, "I do not know how the determination of the racial makeup of that population was made, but regardless of that by whatever process this occurred, it was not random chance that Black citizens of Acadia Parish did not show up." This is the true heart of the defendant's argument in the assignment of error. It falls well short of the requirements of *Duren* and *Lee*. The defendant fails to make any demonstration that Acadia Parish's system of summoning venire members systematically excludes black citizens. Accordingly, we find no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER SIX

In his sixth and final assignment of error, the defendant argues the district court gave him an incorrect instruction regarding the time limits for seeking post-conviction relief. Having concluded sentencing, the district court stated: "Mr. Dugas, you have two years from the date of this sentence in which you can respond, to file any post-conviction relief." Discussing a similar situation as an error patent, this court explained:

> Defendant was incorrectly advised at sentencing that he had two years from that date to file an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides that the defendant has two years after the conviction and sentence become final to seek post-conviction relief. The trial court is directed to inform the defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of the opinion and to file written proof in the record that the defendant received the notice. *See State v. Baylor*, 08-141 (La.App. 3 Cir. 11/26/08), 998 So.2d 800, *writ denied*, 09-275 (La. 11/20/09), 25 So.3d 795.

*State v. Thomas*, 16-578, pp. 3-4 (La.App. 3 Cir. 4/19/17), 217 So.3d 651, 655, *writ denied*, 17-1153 (La. 8/31/18), 251 So.3d 411.

14

Similarly, in the present case, the district court is hereby ordered to file written proof in the record that it issued the appropriate notice to the defendant regarding the provisions of La.Code Crim.P. art. 930.8 and that he received it.

## <u>CONCLUSION</u>

The conviction and sentence are affirmed. The district court is directed to inform the defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record that the defendant received said notice.

**AFFIRMED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.